May it please the Court, Joel Feisner appearing on behalf of Appellant William Bitters and Cross Appellees William Bitters and Robert Boland. After four years of litigation in district court, a venue change from Texas to Nebraska, over 1,000 pages of motions, attachments, over 1,000 pages of trial transcript, here we are today. And this case is now and has always been, in my opinion, a very simple one, a simple matter. This case arises out of a loan that Joyce Petersen made during her lifetime to John Henry on February 8th of 2008. The loan was due to be repaid by John Henry on February 8th of 2010, and it was not repaid then, and it has never been repaid to this day. That's what this case is about, and that's what this case has always been about. And it was a lawsuit that was filed on December 1st of 2014, which was six years and ten months after the loan was made, and four years and ten months after the loan was due to be repaid and wasn't. It is the position of the appellant in this matter, William Bitters, that first of all, this case never should have been submitted to the jury. And second of all, that by the time this case had been tried, we were actually allotted four days for trial. It became a seven-day jury trial. By the time the case was submitted to the jury, because of the events and the conduct that occurred that are enumerated in my brief and will be discussed here today, that the possibility of a fair and just result to my client was rendered impossible. The first thing I'd like to do is, the first four parts to my argument, as set forth in my brief, really sort of fall under the same penumbra of the argument that appellant believes that this case was improperly submitted to the jury. What I'd like to do is, just sort of as a backdrop to that discussion, is to get into the distinction that I raised at a number of points during the trial, that appellant raised during trial, and I think are important to the discussion and argument here today. And that is the distinction that is recognized in Nebraska between cause of action and theory of recovery. The EGENERA case that I cited in my brief stands for the proposition that there is a distinction between cause of action and theory of recovery. And in the EGENERA case, the Nebraska Supreme Court said, the cause of action consists of the operative facts that give one a right to judicial relief against another. The cause of action can have a number of theories of recovery, but there is just one cause of action. And in this case, there was one cause of action, and that was an unpaid loan. It was an unpaid loan that Joyce Peterson made on February 8th of 2008. That's what this case is about. That's what this case has always been about. There were originally, I think, ten theories of recovery. That then was whittled down to seven on a motion to dismiss, which was then reduced to five, a motion for summary judgment, and then there were two theories of recovery that district court submitted to the trier of fact. But again, there was always one cause of action, which is the harm that Joyce Peterson suffered that gave rise to this lawsuit. So given that backdrop, I want to then discuss the trial court's ruling on appellant's Rule 50 motion at the conclusion of the evidence, because I think that that's important. I think there are certain findings, factual findings and legal findings that the district court made that I absolutely agree with and I think are supported by the facts and the evidence that came at a trial in Nebraska law. And then there's a divergence. The first finding that the court made, and I would point to appellant's appendix, pages 862 to 872, which contains the trial court's discussion and ruling on the Rule 50 motion to dismiss. So the court's findings were as follows. Any claim accruing before December 1st of 2010 is prima facie barred by the statute of limitations, and that's set forth in appellant's appendix, page 865. And the basis of that finding, I think, is very sound, because the complaint in this case was filed on December 1st of 2014. And I'm going to get into the application, which statute of limitations applies, but regardless of the applicable statute of limitations, we have to look at December 1st of 2014, the day that the complaint was filed, and go back from there to decide whether or not it was timely filed or if it was time barred. So that was the first finding. It's on page 865 of the appendix. Another finding that the trial court made was that any injury that Joyce Peterson suffered in this case was caused by the nonrepayment of the loan, which Peterson discovered and knew of in February of 2010. Also, based on the evidence, I completely agree. I think the trial court made that finding based on the evidence, and it was proper and appropriate under the circumstances. There was testimony from Joyce Peterson's son, Eric Peterson, at trial, that Joyce Peterson knew as of February of 2010 when the loan was due and hadn't been repaid that she probably wasn't going to get her money back. And that is, in my opinion, the fatal flaw to the plaintiff's case, the fact that the loan had— Wasn't there also evidence, though, that your client was telling her that it would be repaid while simultaneously telling Henry not to pay it? No. To clarify, Judge Grunder, what the evidence was, and this gets to what the court ended up instructing the jury on, is it was a statement that Joyce, I'll talk to John, and I'll see if I can get you your money back. That was the evidence. There was never any evidence of any assurances that Mr. Bitters was allegedly making to Joyce Peterson, don't worry about it, you're going to get paid, and more particularly, and I think this is also a very important distinction between what the evidence showed, is that in no time did Mr. Bitters ever say, don't worry about it, Joyce, I'll pay you, or don't worry about it, Joyce, I'm going to force John to repay your money. Now, from a substantive approach, we can look at whether or not gratuitous comments like, Joyce, I'll talk to John, whether or not that is a legally justiciable or actionable statement in the first place is a valid question. Because Mr. Bitters, there was never any evidence that Mr. Bitters was ever in any better position than Miss Peterson was to compel Mr. Henry to pay the loan or to collect on the loan. So that's how I would address, Judge Grunder, I understand your position, because the language, specific language, is important to the trial court's rulings, I felt it was important to show what the evidence actually indicated. So the other issue that the trial court, I believe, properly determined was that equitable estoppel did not toll the statute of limitations for the claims that survived the Rule 50 motion. So on those issues, we are in agreement, and the trial court also made a factual determination, which I think is appropriate and I agree with, that the only factually disputed substantive allegation after December 1st of 2010 is whether or not Bitters sought repayment of the loan from Henry after it became due in 2010. That appears on Appellant's Appendix 865. Again, this gets back to what we were talking about, Judge Grunder, and that is that the court made its determination that certain theories of recovery survived the statute of limitations because of a dispute in the evidence about whether or not Mr. Bitters in 2011 and 2013 was telling Ms. Peterson, Joyce, I'll talk to John. And so the court concluded that because there was a, Mr. Bitters said, I did, I did, I did talk to John. You know, I told him, you got to pay her. Mr. Henry got up on the stand, and he said, that never happened. So there was at least a dispute in the testimony. Now, we can get into the whole issue of whether or not the testimony that Mr. Henry gave was the product of a secret Mary Carter agreement, but that's a whole other issue, and I'm sort of putting the cart before the horse. The issue, the fundamental problem with the court's ruling on the Rule 50 motion is that it preserved two theories of recovery. One for misrepresentation. Some people call it fraud. Nebraska doesn't specifically recognize a theory of recovery under fraud. It's misrepresentation is the way that it's set forth in Nebraska jury instruction civil second edition. So misrepresentation and breach of fiduciary duty, those were the two theories of recovery that the trial court determined survived summary judgment, or survived the Rule 50 motion. And the problem is, there are two problems. First of all, that both of those theories of recovery, misrepresentation, breach of fiduciary duty, require as an element of proof, proximate cause. In other words, in order for a misrepresentation to be actionable, it has to be the proximate cause of the damages that were proven at trial to the plaintiff. Same thing with breach of fiduciary duty. In order for that to be a legally justiciable theory of recovery, the breach of the fiduciary duty has to be the proximate cause of the damages that were proven at trial. The problem is that what the court effectively did, the court made a determination that anything happening after December 1st of 2010 was barred. It was time barred. These were statements that were given in 2011 and 2013, if you believe the evidence that came in at trial. So what the court was doing is, the court was saying, these statements that were made occurred in 2011 and 2013. They're within the statute of limitations. I'm going to allow that. I'm going to allow the jury to consider them. But the problem is that there was no measurable damages attached to either of those theories of recovery. The only cause of action in this case was the $150,000 loan that was due in 2010. So the court was effectively taking two theories of recovery arising out of conduct in 2011 and 2013 and trying to retroactively apply that to damages that had already been accrued. And so that is the fundamental flaw to the trial courts. I understand what the trial court was trying to do. It was trying to preserve, insofar as it could do it, some sort of theory to submit to the jury. But without any damages attached to those theories, they're meaningless. They're not actionable. You have to have a damages claim that attaches to those, and that's an element of proof. So that is one of the fundamental problems I have. The other issue is, just from a practical standpoint, the instructions that the court gave were so confusing because what they effectively did was they told the jury, the testimony that you heard over the last several days about all these things that occurred back in 2008, the basis of this loan, whether or not it was a good investment, whether or not Joyce Peterson should have been advised as to whether or not to make this loan, disregard all that testimony because it's not relevant anymore because I made a decision that anything occurring after December 1st of 2010 is not to be considered. It's time barred. So the jury was left with a very confusing and almost impossible situation. All they heard was this $356,000 in damages, which was the amount of the $150,000 loan accruing over a period of time up to the time of trial at 11%. So the juror just heard this number, $356,000, and then the trial court effectively told the jurors, don't worry about anything that led up to that loan because that's time barred. And so the jury just looked at this and just decided, out of heck with it, we're just going to award $356,000 against Mr. Bitters and $356,000. Mr. Feisner, I note your time is running. Do you wish to reserve any? I reserve five minutes. You're four minutes into it. Okay. If I may, unless you have any additional questions for me, I'd like to reserve the remainder of my time for rebuttal. Very well. Mr. Gooday. May it please the court, I'm going to show that the district court erred by, one, cutting in half the jury's awards, two, preventing Ms. Peterson from obtaining pain and suffering damages, three, dismissing Robert Boland at summary judgment. And finally, I'm going to show that this court should dismiss all of the arguments made by Mr. Peterson for failing to preserve them in a rule 50A pre-verdict motion. But as a preliminary matter, I first want to address Mr. Feisner's question. I'm sorry, his answer to Judge Grunder's question. Judge Grunder asked him pointedly, didn't your client tell Ms. Peterson the loan would be repaid, but told Henry not to repay her? Mr. Feisner answered no. The correct answer to that question is yes. And it's supported by numerous citations to the record. Mr. John L. Henry, the defendant, testified at trial that he was going to pay Ms. Peterson back one year after the loan was made and when it was due. But bidders told him no, don't pay. He will extend the date on the promissory note by one year. And instead of paying it back, he should use the money to pay the insurance premium from which bidders are into commission. And the court will find supporting citations for that statement in the record in Peterson's separate appendix, pages 3396, 3397, as well as 3354 and 3355. Moreover, the son of John Henry, John L. Henry, also testified that bidders never asked Mr. Henry to repay Ms. Peterson. And the citations for that are Peterson's appendix, pages 3354, 3357. I'm sorry, that was John Henry, the defendant's testimony. But his son also testified that his father was going to pay back Ms. Peterson on time after one year and then chose not to after he was told not to by bidders. And that citation is at Peterson's separate appendix, pages 3255 and 3256. In addition, the daughter of Ms. Peterson, Jalynn Wall, testified at trial that she learned from John L. Henry that bidders had told him not to repay Ms. Peterson. And that testimony is at pages 3201 all the way to 3204 of Peterson's appendix. And April 18, April 18, 2018, was the first time that the Peterson estate learned that bidders had told Henry not to repay the loan when it was due and to pay for insurance instead. And that's in the record at Peterson's appendix, 3184 to 3188. And the testimony of her son, Eric, testified to that. And it's also at 3349 to 3350 in the testimony of defendant John Henry. And it's also in the testimony of Ms. Wall at 3203 to 3204. And finally, her accountant, Sharon Miller, also testified to that. She had talked to bidders about getting the money back. At bidder's appendix, page 298. And she also heard, and Ms. Wall, Jalynn Wall, the daughter, actually heard bidders tell Ms. Peterson on the phone that he was working with Henry to get her repaid. And that's at Peterson's appendix, 3200 to 3201. And also at 3297. Ms. Wall also heard. Hold on, hold on. You've now spent three and a half minutes of your time brawling around in the facts related to this one question. And, you know, we have access to the record and we'll look at it when we get to writing it, but maybe you want to move on to something that is not so fact intensive. I appreciate the guidance, Sharon. I absolutely do. Regarding having the jury's awards, the Supreme court held that a jury's findings should not be overturned if there are any inferences to support it. And that's the case of Lavender versus Kern, which is in the brief at page 19 or page 27 of 88. And then, and the law of remedies has a maximum in it that the law of horrors duplicative recoveries. Why is this not a duplicative recovery? Your Honor, it's not the elements of damages that are separate between the two claims. I'm sorry. Your Honor, it was the last part of your question. What are the elements of the damages that are separate between the two claims? How are they? Well, because, because they're an identical number and that raises some questions as an old trial judge, I'll tell you. And, and you know, if the elements of damages are not plainly and distinctly different, then it kind of has the look of something that's duplicative. Well, Your Honor, this court with judge Kelly on the panel held in landmark infrastructure holding company, LLC versus already the investors that jury's awards for negligent misrepresentation and breach of contract were not duplicative. And she's. Well, they're not duplicative because they have different elements of damages. Now, if you look out, you know, we don't let plain pain and suffering go here. So it sounds to me like in the instructions, when I looked at the jury instructions to it,  was, was a little bit hesitant to adopt your tortious breach of a contract theory. You know, in common law, this would be a lot less disturbing and a lot less difficult to sort out because common law had a fraud claim and it had a deceit claim. And the claims would be different. And they had different elements of damages. Now one, once Nebraska has decided to conflate it all into misrepresentation and it's in a contract context. Now, the question that I've got is what does Nebraska law say about the elements of damages? Cause I mean, that's, that's where the rubber is going to hit the road here. Your Honor. Just to clarify there, there was a claim for breach of contract against John Henry. The jury found liability. The claims against bidders were not for breach of contract that claim against him, for his contract with Ms. Peterson was dismissed. The claims for which the jury found liability were, were different. They were fraudulent misrepresentation. Him telling her the loan would be prepaid when he's telling Henry not to pair. And also, yeah, which a common law be tortious interference with the contractual relationship. I get that, but what were the damages? How would the damages be different? What, how would the elements of damages be different? And how would the jury come to exactly the same number looking at different elements? The other claim that the jury found liability for against bidders was breach of fiduciary duty. And there's an equitable remedy of disgorgement for breach of fiduciary duty. And in his opening statement, Mr. McMenemy, my co-counsel had said to the jury, we want you to give back all the money he has earned. There was a great deal of testimony, a trial about the commissions that bidders earned from, from his sale of products to the Henry family. And from a sale of products to Ms. Peterson. And it's in the record, but he earned a, he sold a $7.7 million policy to the Henry's with a premium of $634,000. There was testimony that he'd get a 25% commission. That would be $158,000 in commissions under the law. There's a part case cited in our brief, which says that discourse disgorgement is the remedy for breach of fiduciary duty. So these are different claims with different elements and have different remedies. So for fraudulent misrepresentation, we have a legal remedy. The same goes for the breach of contract. Now this has nothing to do with the cases that this court has held. And under Nebraska law, there's a case of Denori and Yost Holmes LLC versus frost on page 32 or page 40 of 88 of our brief, where the Nebraska Supreme court said that a plaintiff can recover under both fraud and breach of contract. There's no election remedies required. And the reason why is because the claims are consistent. This is not a case where we're saying we want the jury to undo the contract with Henry and say that it was entered into based on fraud. Yet. We also want the jury to enforce the contract and make Henry pay. No, this is a case where we're asking Henry to pay and enforce the contract. We're also asking to hold bidders liable for his fraudulent misrepresentations of the contract would be paid, which is consistent. And for his fraudulent misrepresentations that he was representing the best interests of his Peterson as a fiduciary with her best interests at heart. So those are consistent remedies. Judge Erickson, we're not asking to undo the contract yet, enforce the contract. And there have been decisions recently by the members of this court explaining the nature of election of remedies, where judge Grunder was in a case where they held that you can't have a contract and both ask to terminate it and ask to perform it. That would create a conflict, but we're not asking for that. We're asking for consistent remedies. So there's no conflict. Moreover, this whole idea of inconsistent remedies is an affirmative defense called the election of remedies. And here bidders fail to weigh that it's not in his answer, which can be found on Peterson's appendix at pages nine to 10, no mention of election remedies for three years. He didn't mention election remedies until the last day of trial. And he waived it under the wood versus milliard Supreme court decision. Uh, affirmative defenses, uh, must be raised or they're waived. Um, as a remediator, it was also an error of law violator seventh minute rights under the Hetzel Supreme court case in the itch versus border regions case decided by this court, the court ordered a full, uh, a reinstatement of the full award after an improper remit stir had been made. The itch case was decided by a panel with judge Grunder in a Eckerberg versus interstate studio, eighth circuit from 2017. So the second issue before this court is whether the district court erred in precluding Ms. Peterson from seeking pain and suffering as damages due to lack of evidence, which is what was the reason given, uh, and beaters bidders appendix at nine Oh two to nine Oh five by the district court. Now, several witnesses testified to her pain and suffering, including her children and accountant. And that's in the record at Peterson's appendix three 66 or three 67, three one nine two, three two Oh two. It's also in bidders appendix at two 96, three 46, five 17. There's a case in which judge Grunder was on the panel more versus American family mutual life insurance. In that case, the court held that a plaintiff's testimony that he was worrying and losing sleep. And he was embarrassed by being called an arsonist was sufficient to support a claim for pain and suffering. At any event, this issue was not even listed in bidders pre verdict rule 58 motion. He waived any right to address this issue on appeal or to have it brought up by the court. Um, the court raised the issue. Sue a sponty. The court also would not allow testimony from witnesses who believe stress hastened her death. And that's it. Bidders appendix pages three 64 to three 65. There's a case by the Nebraska Supreme court called Duescher versus Robinson. It's in our brief at page 35 where the court held that mental anguish could be inferred, uh, as a natural consequence to the defendant's misconduct. This was a young boy. He was 24 mental anguish inferred from this conduct. I get that, but don't you need an expert witness to have somebody testify that my death was hastened by my, my emotional pain and suffering? No honor. You don't. Why not? That's, that's within the scope of a, of a lay person's expertise and knowledge. Yes, sir. Yes. Really? Really? What evidence would you have to support a claim that, that, that I'm under stress. So I'm going to die. Yeah. And we've cited numerous, all of us, there are judges that all be dead already. And all you lawyers ought to be when you're sitting in here, your life ought to be shortened, right? This is a stressful place. I mean, that can't possibly be right. Well, your honor's arguments invigorating my blood cells even now. So I I'm waking up rather than falling asleep, but no, your honor, the, the case law, which is cited in our brief holds that lay testimony is sufficient. Now, your honor may be thinking of cases of intentional infliction of emotional distress, which requires proof of severe emotional injury, but that's not required here. Well, slight emotional injury can cause you to die prematurely. Yeah. That's a separate issue. Let's put that aside. The cause of death. I I'm simply here, here, the district court would not allow pain and suffering damages at all. Let's put aside the idea of death, but I'm just talking about garden variety, emotional damages. That's what we're talking about. And that was what was discussed in the briefs. The issue of causing her death is not even in the briefs. I just tossed it in there with something I came across in the record. We would like to get garden variety, emotional damages, judge Erickson and, and Smith versus anchor building corporation. They'd circuit held that a plaintiff's testimony that he was really embarrassed was enough to get those garden variety pain and suffering damages in 1981 claim. In the case of more versus American family, mutual insurance, it was enough to testify that he was losing sleep. The third issue is whether the district court erred in dismissing Robert Boland summary judgment. There were disputed issues of fact about whether there was an implied partnership between him and bidders. Evidence showed that they worked together under the banner of United financial information systems or services with a website where he was listed under the about us page. And that's at a Peterson appendix, seven, eight one to seven, eight nine. Uh, they consider themselves colleagues. They shared clients. They remain money off those referred clients. They put on joint presentations, bidders testified that Boland was something we offer to our clients. This is at Peterson's appendix, seven, eight, two, the Supreme court and Atticus said that at summary judgment inferences must be read, even if they're circumstantial evidence only to support the showing of an agreement, uh, under Wilson versus King, the in rate Keatonics case at page 20 of our reply brief. Um, we've explained factors that show co-ownership for an implied partnership. And they include things that are shown here, such as contribution of time and expertise, control sharing, profit sharing, um, being considered a member of the business rather than an outside contractor. Um, profit, uh, knowing things about the business and having access information that other people don't have. All these factors were met. Even today, they operate under the same heading, uh, at the website, H T T P S, uh, forward slash forward slash estates and captives.com. Now this is not in the record, but you may take judicial notice of this website. If the re evidence were not enough, Ms. Peterson did ask for adverse inferences of an implied partnership after they could fail to comply with an order to produce information about their business dealings with each other. Um, that was denied. Ms. Peterson also asked for a second deposition after Mr. Boland refused to answer questions about how much money he earned from clients referred to him from bidders, what their business dealings were, where they made joint presentations. That was denied. Ms. Peterson asked for a rule 50 60 continuance to get those adverse inferences. It was denied. And this case is different from the cases that your honors have decided on rule 56 D because here we did file a motion to compel here. We did ask for a supplemental brief here. Um, we did have declarations for myself and Mr. McManamy that stated the facts we needed and that we were, they were all relevant. It's not one of those cases like the case. Your honor decided where the evidence was in admissible, extrinsic evidence. And then fourth, um, the appeal should be dismissed by bidders because, uh, he, first of all, he hasn't contested any of the arguments about why his appeal should be dismissed. Um, his appeal repeated verbatim, all these arguments from a lower court that's forbidden by local rule 28. A the fig pin case side in our brief at page 48 said the 10th circuit would not consider a brief. It was a verbatim copy. Um, he did not raise,  his issues in a pre-verdict rule 50 a motion except for statute limitations. Um, these issues, these issues include the Mary Carter agreement. We're not raised sufficient. If your evidence was not specifically raised verdict form, jury instructions were not raised in his pre-verdict rule 50, a motion, uh, and then more versus American family mutual insurance. We judge Grunger on the panel, Mr. Good day. Your time's expired. May I do a concluding remark very quickly. In conclusion, in conclusion, the district court's error prevented the children. Ms. Peterson beneficiaries to her state from obtaining justice to honor their mother. They could not obtain, uh, the full jury's awards of 356. I think we understand your argument. We're ready for rebuttal. Thank you. A plaintiff is only entitled to recover damages, which would reasonably place the plaintiff in the same position. Had the alleged breach not occurred, that's the Stanbury case. Um, as far as the issue of remitted, or, um, I, again, the, the word remitted or appears nowhere in the, in the court's memorandum order, um, the 750 or $713,000 at plaintiff, or that, uh, Appley is now claiming an entitlement to that appears nowhere on jury, jury verdict form appears nowhere, uh, in the, um, uh, record. There is no basis whatsoever for the trier of fact, um, to, uh, for this court to determine that that's what the trier of fact meant. What the trier of fact did in the verdict form was it awarded 356,000 on the claim against Mr. Bidders and 356,000 on the claim against Mr. Henry. I would also notice very telling that before the verdict came in plaintiff, or the plaintiff Appley attempted to dismiss Mr. Henry. So they were perfectly satisfied with dismissing one of those claims that was in favor. So I think that that's a disingenuous argument. My time has expired. Um, again, my position on, uh, for appellant is we're asking for the court to remain with directions to dismiss, uh, um, and finding that the rule 50, uh, ruling was incorrect, uh, or that there was, um, uh, injustice at trial in a case be remanded for a new trial. Very well. Thank you. Counsel case has been, uh, argued and submitted. And we appreciate your appearance.